**In re Carla Jean CHURA aka Carla J. Chura, Debtor.**

**Bankruptcy No. 83 B 2219 G.**

United States Bankruptcy Court,
D. Colorado.

Sept. 6, 1983.

Wayne Robinson, Aurora, Colo., for debtor.

Jeffrey Edelman, Denver, Colo., for Debra Stephens.

MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

FINDINGS OF FACT

The creditor, Debra Stephens, objects to confirmation of debtor's Chapter 13 Plan. Stephens was awarded a judgment in the State court on June 1, 1983, *nunc pro tunc,* May 11, 1983, for $6,808.27 on a claim for wrongful conversion, $5,000 for outrageous conduct, and $15,000 as punitive damages resulting from the court's finding that the debtor acted with a willful and wanton disregard of the rights and feelings of the plaintiff, Debra Stephens.

Stephens is a cousin of the debtor, Carla Chura, and has only an Eighth grade education, which she received in special education as a result of a learning disability. Stephens has two children and has subsisted on welfare and social security which she receives as a result of this learning disability. It was not possible for Stephens to maintain a checking account because of her disability; thus, she asked her cousin, Carla Chura, the debtor here, to accept Stephens' checks and maintain the funds for her in Chura's own checking account. Chura had a high school education and had training and experience as a bank teller. Chura knew of Stephens' disability and agreed to open an account in Chura's own name to maintain Stephens' funds.

Thereafter, the evidence is replete with controversy and disputes regarding whether the debtor spent all of Stephens' money on behalf of Stephens and her children. Indeed, there appears to have been $6,808.27 unaccounted for from the Stephens' account. The state court, after trial, clearly found that Chura had not accounted for funds of Stephens and determined Chura's conduct to be unconscionable. Accordingly, the aforementioned judgment was entered. Nothing in the evidence here refutes the findings of the state court.

Indeed, the debtor's father testified before this Court to a telephone conversation he had with Stephens wherein she allegedly offered to buy an automobile so that Chura could run errands for her, in return for

which Stephens would give the car to her cousin, Carla Chura. This is how the 1975 Ford Maverick listed in the debtor's Chapter 13 Statement came to be in her ownership. Even if the contents of the telephone conversation are true, it suggests further overreaching by the debtor and her father by taking advantage of the offer in view of their knowledge of Debra Stephens' handicap.

Approximately 8 days after the effective date of the judgment in the state court, this debtor filed for relief under Chapter 13 of the Bankruptcy Code. She had previously contemplated filing as a result of financial difficulties and a period of unemployment, but did not do so until the Stephens' judgment was entered against her.

A Plan was filed offering to pay the sum of $100.00 from a surplus of $162.00 into the Plan for a period of nine months. Secured debts, including the attorney who was given a lien on debtor's house to secure attorney's fees incurred in the state court proceeding, are to be paid in full outside the Plan. Unsecured creditors in the amount of $30,-437.46 are to be discharged by the payment of $8.00, shared pro rata, but not less than $1.00 per claim. Thus, Stephens' judgment of $26,808.27, for willful conversion, outrageous conduct and punitive damages would be discharged for approximately $1.00.

The debt to Stephens would be barred from discharge under Chapter 7 by virtue of 11 U.S.C. § 523(a)(2), (4) and (6).

The question here is whether the Plan has been filed in good faith under Chapter 13.

### CONCLUSIONS OF LAW

Confirmation of a Chapter 13 bankruptcy Plan requires the Court to find that the Plan has been proposed in good faith under 11 U.S.C. § 1325(a)(3). The test of "good faith" in this District is clearly set forth in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983). There, the Court sets forth 11 specific factors to be considered, but states: "This list is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case." *Flygare v. Boulden, supra,* at page 1348.

The Court also quotes with approval from *In re Estus,* 695 F.2d 311 (8th Cir.1982), as follows:

"[T]he proper inquiry should follow the analysis adopted by the Fourth Circuit [*In re Deans,* 692 F.2d 968]: whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied."

Debtors frequently wish to take advantage of the more liberal discharge provisions of Chapter 13 rather than those provided for in Chapter 7. No court has held this to be indicative of a lack of good faith, although it is one of the factors to be considered in *Flygare, supra.*

The only debts not subject to discharge in Chapter 13 are those set forth in § 1328(a) of the Code. That section only excepts from discharge those debts provided for under § 1322(b)(5) and § 523(a)(5), regarding maintenance and support. Debts founded on false pretenses, fraud or defalcation, and willful and malicious injury, as set forth in § 523(a)(2), (4) and (6) are not within the exceptions to discharge under Chapter 13. While not specifically excluded from exceptions to discharge, such provisions are conspicuous by their absence.

Thus, on the one hand, it could be argued that Chapter 13 was designed to afford relief to debtors in Chura's position, who have been overwhelmed by judgments and other debts, not subject to discharge under Chapter 7, but too oppressive to satisfy.

However, on the other hand, I cannot conclude that Congress either intended or, by inadvertence, overlooked the possibility that debtors could incur debts through the perpetration of willful conduct and fraud, absolving themselves of responsibility for such debts through Chapter 13 plans that

offer token repayment, or no repayment at all. This Circuit, through its decision in *Flygare v. Boulden, supra,* empowers the Court to carefully scrutinize such conduct, along with a multitude of other factors, in determining the good-faith motives and efforts of the debtor in each case.

Here, I weighed all 11 factors specifically set forth in *Flygare* and have considered the conduct of the debtor in the context of the provisions, purpose and spirit of Chapter 13 as set forth in *In re Estus, supra.* Consideration of the factors from *Flygare* are as follows:

1. The debtor's surplus of $162.00 per month results from an apparently reasonable budget. The amount of payments therefrom, $100.00, is not unreasonable;

2. The debtor's employment history is spotty, and she has apparently achieved most of the potential that could be expected of her, with a high school education, in operating as a bank teller. There is little likelihood of substantial future increases in income, and the Plan appears to be her best effort at this time, for the period provided;

3. The duration of the Plan is only nine months, which can hardly be classified as a substantial effort in view of the substantial indebtedness which will go unsatisfied;

4. The accuracy of the Plan's statements did come into question in connection with a possible under-valuation of a diamond for which a re-mounting expense of $799.67 was incurred. A total jewelry value of $500.00 was listed by the debtor. Little other evidence was presented to indicate inaccurate statements or an effort to mislead the Court;

5. Preferential treatment between classes of creditors is not a problem;

6. Modification of secured claims is not a problem;

7. The debt involved in this matter is predicated upon shocking conduct of this debtor. The debt would be non-dischargeable in Chapter 7, and is a source of great concern;

8. There are special circumstances in this case. As previously indicated, the circumstances which lead to the judgment for which this debtor seeks a discharge must be considered. Additionally, the timing of bankruptcy approximately 8 days after the judgment is also suspect in considering good faith. The overreaching practiced in taking advantage of Debra Stephens' handicap in accepting an automobile which the evidence shows was worth approximately $2,500.00 and was purchased from Stephens' social security checks is an additional affront to the conscience of the Court. This is then aggravated by evidence from the schedules that show this same vehicle has been refinanced by the debtor to obtain additional funds, which she keeps, along with the vehicle;

9. This appears to be the first effort of the debtor to seek relief under the Bankruptcy Reform Act;

10. The motivation and sincerity of the debtor in seeking Chapter 13 relief is of concern to me. This filing appears to be for the distinctly primary, if not sole, purpose of extinguishing the Stephens' judgment. The remaining unsecured debts did not cause the debtor to file for bankruptcy, and the indebtedness to Stephens constitutes approximately 90% of the unsecured indebtedness to be discharged, all for $1.00 each;

11. The burden of administration on the Trustee is not unusual.

While many of the factors considered in *Flygare* would support a finding of good faith, the nature of the debt, the motives and the special circumstances of this case bring that good faith into serious question.

Care must be taken not to allow revulsion over a debtor's past deeds to detract from or impair a finding of good faith where that debtor is making an effort to satisfy past obligations to the extent possible and still embark upon a fresh start. Yet, where Chapter 13 is merely used as a tool to avoid certain obligations, while preserving property, and yet achieving the fresh start, it appears only a token effort is made. This causes serious questions about the debtor's good faith.

I have concluded from the evidence that, on balance, the effort here is not toward rehabilitation; rather, it is an effort to evade responsibility for a judgment which the debtor wishes to absolve through bankruptcy rather than the appellate process. The Plan does not comport with the purpose and spirit of Chapter 13. It abuses the provisions, purpose and spirit of Chapter 13. See, *In re Estus, supra.*

This is not to say that a Chapter 13 Plan calling for less than full payment of the obligation to Stephens could never be confirmed. However, here, no effort is being made to restore the funds unaccounted-for, disregarding the damages imposed as a result of outrageous conduct and the willful and wanton conduct of the debtor which gave rise to punitive damages. Any Plan presented to this Court must demonstrate a serious and meaningful effort to address the debt to Ms. Stephens if it is to pass muster on the question of good faith.

Accordingly, confirmation of the proposed Plan is denied. The debtor has ten days within which to dismiss, convert, or submit a modified Plan.