**In re Karl Eugene CHASE, et al., Debtor.**

**Civ. No. Y–83–1971.**

United States District Court,
D. Maryland.

April 30, 1984.

See also, Bkrtcy.Md., 28 B.R. 814.

Shelly E. Mintz, Hyattsville, Md., for plaintiff.

Thomas R. Bateski, Laurel, Md., for defendant.

### MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The debtors in this case, Karl Eugene and Barbara A. Chase, filed a Chapter 13 petition for reorganization, which was confirmed by Bankruptcy Court Judge Paul Mannes on May 18, 1983. One creditor, Selene Harold, a minor, filed objections to confirmation of the bankruptcy plan through her mother, Sheila I. Harold, and has filed this appeal from the order of the Bankruptcy Court confirming the plan.

The basic question under consideration is whether Judge Mannes correctly determined that the plan was filed in good faith. In making such a determination, background details are helpful.

The difficulties between the parties in this case arose several years ago when Selene Harold, then a 9-year-old girl, spent the night at the Chases' house with her friend Cynthia Chase, the debtors' daughter. Apparently, on that night, Mrs. Chase left her husband alone with the children, and her husband sexually assaulted Selene Harold and his daughter, Cynthia. As the creditors' former counsel later explained, this incident wasn't "a case of fondling or a flash. This was an actual attempted penetration."

Karl Chase either entered a guilty plea or was convicted on criminal charges brought in connection with his conduct that night. At the time of the sentencing, the lawyer for the parents of the Harold girl—who had filed a civil suit against the Chases—negotiated a consent judgment with the Chases. The gist of the judgment was that the Chases would pay the Harolds $25,000 in exchange for the Harolds' agreement not to testify at the sentencing hearing (and presumably, although this is not clear from the record, in agreement for dropping the civil suit). Chase has admitted that the purpose of signing the judgment was to procure a lighter sentence; he further admitted that at the time he signed the consent judgment he did not expect to pay the money [Deposition of October 12, 1982]. Chase received probation in lieu of a jail sentence and Harold now claims that at least part of the reason Chase was not being incarcerated was the fact that he had entered into the consent judgment.

As it turned out, the consent judgment was flawed. The original complaint had been filed against Karl and *Cynthia* Chase, rather than Karl and *Barbara* Chase, as a result of an oversight by the Harolds' lawyer. Both Mr. and Mrs. Chase signed the consent decree anyway.

Several months later, the Harolds discovered that the complaint had been filed, and judgment entered, against the wrong parties, and they moved to have the judgment amended. This was done by Judge Jacob Levin, who, on September 17, 1982, found that a "fraud" had been "perpetrated on this Court and I'm going to change it." Judgment was amended to reflect that it had been entered against Karl and Barbara Chase, husband and wife.

During the period after the initial judgment was entered, the Chases made no attempt to pay on the judgment and the Harolds initiated garnishment procedures against the Chases. Chase's wages were

garnished, and immediately thereafter, on September 29, 1982, the Chases filed a joint petition for reorganization under Chapter 13 of the Bankruptcy Code.

In their petition for reorganization, the debtors listed a secured debt of less than $900 (secured by their car), and unsecured debts of $25,923 (apparently there is an error in the addition performed on the figures listed in their petition, since they list debts of $25,000 to Selene Harold and other debts which total more than $1,400). The debtors also stated that they were earning approximately $175 a month in excess of their expenses.

After two hearings, Judge Mannes confirmed the Chapter 13 plan, modified to show a biweekly payment to the Harolds of $75 over a five-year period as opposed to the requested 3 years. He found that the plan had been filed in good faith, considered the assertion that the discharge of the $25,000 consent judgment amounted to bad faith by payment of $9,750 over five years, and found that it did not, reasoning that the consent judgment as to Mrs. Chase would have been dischargeable under Chapter 7, as she was at most guilty of gross negligence in leaving her husband alone with Selene Harold and their daughter, and gross negligence is not enough to constitute willful and malicious conduct required to make the debt non-dischargeable under Chapter 7. While Judge Mannes conceded that Mr. Chases's debt would have been non-dischargeable under Chapter 7, he noted that the purpose of Chapter 13 was to allow discharge of debts which the more restrictive Chapter 7 would not allow. Hence, the nature of the debt being discharged was not sufficient to find that the plan had been proposed in bad faith. (*See* Memorandum and Order, docket number 19).

The appellants have appealed the order of the Bankruptcy Court which confirmed the Chases' Chapter 13 plan. The basis of the appeal is that the court erred in its finding that the plan submitted by the appellees/debtors was in "good faith" and thus in compliance with Chapter 13.

The starting point for an assessment of this appeal is the bankruptcy law. The present provisions of Chapter 13 were enacted by Congress as part of the Bankruptcy Reform Act of 1978. 11 U.S.C. §§ 1301–1330. The former Chapter 13 was liberalized to provide an effective system for dealing with consumer bankruptcies and to encourage more debtors to pay their debts under bankruptcy court supervision. *In Re Estus*, 695 F.2d 311 (8th Cir.1982), *citing* 1978 U.S. Code Cong. and Admin. News 5763–66, 5787.

Chapter 13 contains provisions enabling certain debtors to repay all or a percentage of their debts according to a court-approved plan. Chapter 13 debtors make payments to creditors out of future income over a three- to five-year period, after which they are entitled to a broad discharge of their obligations. 11 U.S.C. §§ 1301–1330. *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983). The bankruptcy court must confirm the Chapter 13 plan if it meets the six criteria Congress set out in § 1325(a):

> The court shall confirm a plan if—
>
> (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
>
> (2) any fee, charge, or amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation, has been paid;
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;
>
> (5) [deals only with secured claims] and
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan.

Following the confirmation of a plan by the Bankruptcy Court, the District Court may review that confirmation if a timely notice of appeal has been filed. Emergency Rule 51–A(e)(2)(A)(1). The District Judge may accept, reject or modify the order of the Bankruptcy Judge. Emergency Rule 51(e)(2)(B).

The issue for this Court is to determine whether the Chapter 13 plan submitted by the Chases has met the good-faith requirements of § 1325(a). The interpretation of that requirement has recently generated a substantial body of case law and has spawned a host of scholarly comment. *See* articles cited in *In Re Goeb*, 675 F.2d 1386, 1388 n. 3 (9th Cir.1982). While courts differ in their assessment of what factors are most important in determining whether or not a plan complies with the good-faith requirement, there is general agreement that such an inquiry involves a broad assessment of many factors. The court in *Matter of Yavarkovsky*, 23 B.R. 756 (S.D. 1982), aptly describes the tenor of such an assessment:

> The good faith requirement contemplates a broad judicial inquiry into the conduct and state of mind of the debtor, with reference to the proposal of the plan. It goes much farther than whether there has been technical compliance with statutory obligations.... Such an inquiry properly enters into all aspects of fair dealing relevant to the proposal of the plan. It looks not only to the lawfulness of the debtor's conduct, but also ... to his good faith in dealing with the creditors and their claims. *Id.* at 759.

This Court must make such an inquiry against a backdrop of rapidly evolving case law. In the past several years, most of the Circuits have attempted to define what goes into an assessment of "good faith." Several of the earlier decisions emphasized that an examination of the good-faith requirement should be directed at determining "whether or not there has been abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal." *In Re Rimgale*, 669 F.2d 426 (7th Cir.1982), citing *Collier*

on Bankruptcy: *In Re Terry*, 630 F.2d 634 (8th Cir.1980).

As courts have grappled with the issue of what behavior on the part of the debtor might constitute an abuse of Chapter 13, a number of factors to be considered in making a good faith assessment have been articulated. The Fourth Circuit, in one of the earlier cases, described 8 factors which could be looked at in a good faith inquiry: substantiality of proposed repayment, the debtor's financial situation, the period of time over which payment will be made, the debtor's employment history and prospects, the nature and the amount of the unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982). In developing this list, the court emphasized that the totality of the circumstances surrounding the plan ought to be examined on a case-by-case basis in order to apply the statute as now written. *Id.*

In a decision handed down during the same period as the *Deans* decision, the Sixth Circuit found two additional aspects of the debtor's behavior to be of importance: the circumstances under which the debtor contracted his debt and his demonstrated *bona fides* or lack of same in dealing with his creditors. *Memphis Banking and Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). In *Memphis*, the court emphasized these two factors, noting: "We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud, or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong." If a debtor has acted fraudulently, the court ought not to confirm a Chapter 13 petition. *Memphis* at 432.

In later cases, the Eighth and Eleventh Circuits, accepting the *Memphis* list of factors added to the scope of the inquiry, finding several other factors relevant to a good-faith determination: the extent of preferential treatment between classes of creditors, the extent to which secured

claims are modified, the motivation and sincerity of the debtor seeking Chapter 13 relief, and the type of debt sought to be discharged and whether any such debt is non-dischargeable under Chapter 7. *In Re Estus*, 695 F.2d 311, 317 (8th Cir.1982); *In Re Kitchens*, 702 F.2d 885, 889 (8th Cir. 1983). The most recent circuit court case to deal with the good-faith issue reiterated the factors considered in *Estus* and *Kitchens*. *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983).

Analysis of Chapter 13 petitions for a good-faith determination has, almost without exception, involved a focus on one or two of these factors rather than an assessment of all of them. Many cases have been concerned with the question of whether or not an insubstantial repayment plan constitutes bad faith on the part of the debtors, with courts deciding both ways— *i.e.*, that an insubstantial payment is indicative of bad faith or that it is not. *See Flygare v. Boulden*, at 1346–47 for this kind of analysis and a description of the range of findings on this issue. As noted in *Flygare*, the trend on this issue is not to consider the amount of the payment dispositive on the issue of good faith, but simply a possible indicator of whether or not good faith exists. *Id.* at 1347.

A second line of cases deals with another aspect of Chapter 13 plans: whether the plan seeks to discharge a debt that is tainted by fraudulent or otherwise illegal conduct. These courts are following the emphasis of the Court of *Memphis* which held that a Chapter 13 plan ought not to be confirmed if it allows a debtor to use the bankruptcy laws to *further* his fraudulent conduct.

A good example of the tenor of such cases is found in *In Re Sanders*, 28 B.R. 917 (D.Ka.1983), where the court found that a $70,000 debt incurred through the fraudulent transfer of stock could not be part of the Chapter 13 plan. The court denied confirmation of the plan noting:

> This court is convinced that the debtor's primary and overriding purpose is to manipulate Chapter 13 as a device to escape

nearly all of his liability on more than $70,000 of non-dischargeable [under Chapter 7] debts that are tainted with his fraudulent conduct. Those motivations and intentions hardly comport with the true spirit and purpose of Chapter 13; they constitute a lack of good faith required by 11 U.S.C. § 1325(a)(3). *Id.* at 922.

An Ohio Bankruptcy Court considered a case with facts seemingly parallel to those in the case before this Court. In *Matter of Stevens*, the creditor alleged that the debtor had defalcated, been discovered by the creditor, signed a note in payment for the fraudulently obtained funds, and then listed that note as a debt to be discharged under a Chapter 13 plan. While the court could not discern from the evidence whether the nature of the debt was as described by the creditor, the court noted that if the creditor's allegations were true, that would preclude confirmation of the Chapter 13 plan. 25 B.R. 664 (S.D.Ohio 1982).

At first glance, these cases would appear to conflict with one of the purposes of the admittedly liberal provisions of Chapter 13 which is to allow the discharge of debts that are non-dischargeable under Chapter 7. It is clear that debts resulting from illegal acts such as embezzlement, fraud and willful and malicious injury can be discharged under Chapter 13. *In the Matter of Scher*, 12 B.R. 258 (S.D.N.Y. 1981); *In Re Lincoln*, 30 B.R. 905 (D.Colo. 1983); *In Re DeSimone*, 25 B.R. 728 (E.D. Pa.1982). It would seem contradictory to accept on the one hand a theory that debts incurred through fraud or willful bad conduct can be discharged under Chapter 13 and on the other hand, to assert that a plan which attempts to obtain such a discharge is one proposed in bad faith.

What was important for the courts which have grappled with these seemingly contradictory stances is the link between the fraudulent debt and the Chapter 13 process. The nature of the debt itself cannot preclude a Chapter 13 filing unless the debt was fraudulently incurred without any

intention of repayment because of an anticipated abuse of the Chapter 13 process. *Margraf v. Oliver*, 28 B.R. 420 (S.D.Ohio 1983). There need not be a filing for bankruptcy immediately after the tainted debt is incurred; for one court, a filing directly following the discovery by the authorities of a fraudulent scheme which gave rise to the debt was evidence of the debtor's bad faith in the Chapter 13 plan. *In Re Troyer*, 24 B.R. 727 (N.D.Ohio 1982).

A recent Colorado decision involved a $27,000 judgment against the debtor for the debtor's willful conversion and outrageous conduct, and the filing of a Chapter 13 plan directly after the judgment. The judge noted in not confirming the plan that the nature of the debt, the timing of the bankruptcy filing, and the motivation of the debtor (when it was clear that the sole purpose of the filing was to extinguish the debt) all combined to indicate bad faith. It is worth noting the language of the opinion:

> Debts founded on false pretense, fraud or defalcation and willful and malicious injury ... are not within the exceptions to discharge under Chapter 13.

> Thus on the one hand it could be argued that Chapter 13 was designed to afford relief to debtors in Chura's position....

> However, on the other hand I cannot conclude that Congress either intended or by inadvertence overlooked the possibility that debtors could incur debts through the perpetration of willful conduct and fraud, absolving themselves of responsibility for such debts through Chapter 13 plans....

> The effort here is not towards rehabilitation; rather, it is an effort to evade responsibility for a judgment which the debtor wishes to absolve through bankruptcy rather than through the appellate process. The Plan does not comport with the purpose and spirit of Chapter 13. It abuses the provisions, purpose and spirit of Chapter 13. *In Re Chura*, 33 B.R. 558, 560–61 (D.Colo.1983).

Thus, while a finding that a debt is non-dischargeable under Chapter 7 by no means precludes a compromise of that debt under Chapter 13, the nature of the debt may be a signal to the court to look further for evidence of bad faith in the relationship between the debt and the bankruptcy proceedings. *In Re Duke*, 29 B.R. 802, 805 (D.Kansas 1983); *First National Bank of Dayton, Ohio v. Robinson*, 26 B.R. 377, 379 (D.Ohio 1982).

In turning to the facts of the case at hand, the Court follows the lead of the Fourth Circuit in the *Deans* case in examining the totality of the circumstances relating to the Chases' proposed Chapter 13 plan. We note at the outset that many of the factors which reflect on the faith of the debtors in regard to their plan are positive. As to his employment history and prospects, Chase has been employed at the same job for seven years. [Hearing Tr. 29]. As to the period of time payments, the plan as amended would have payment for the five year maximum allowable under Chapter 13 [Confirmation order of Judge Mannes]. Concerning the debtor's honesty, the plan appears to have an accurate statement of the debts, expenses, and percentage repayment of the unsecured debt. As to the debtor's financial situation, the amount of the proposed repayment, $75 biweekly, constitutes most of the debtor's surplus after his family's needs are met. The debtor has not, to the court's knowledge, sought relief in prior Bankruptcy proceedings. Nor do there appear to be any special circumstances that would affect the implementation of the plan. Thus, many of the factors by which courts have judged good faith would indicate a plan proposed in good faith. *In Re Estus* at 317.

The Court notes, moreover, that following the modification of the plan to extend the payment to the five year maximum, the payment scheme is not insubstantial. If all of the payments are made over the five-year period, the total payment on the debt would be $9,750. This would amount to payment of more than a third of the $25,000 consent judgment. Thus, this case is distinguishable from a case such as *In Re*

*Chura* where the court found not only a linkage between a fraudulently incurred debt and a Chapter 13 filing but also a negligible repayment effort. *Id.* at 560.

While the Court recognizes the strengths of these aspects of the Chases' plan as being indicative of good faith, they are not dispositive of the issue. Of concern to this Court are both the type of debt sought to be discharged, and the motivation and sincerity of the debtor in seeking relief. *In Re Estus* at 317.

It is clear from the petition that the principal debt sought to be discharged is the consent judgment. The other debts to be discharged are essentially nominal consumer debts which the Chases would no doubt continue to repay absent bankruptcy supervision. The debt was incurred via a judgment knowingly and deliberately entered into by the Chases. The reason for the judgment was the child molestation charge. The motivation for incurring the debt was to avoid more serious sanctions in a criminal proceeding. The judgment was thus a result of a serious crime, and part and parcel of criminal court proceedings. The fact of the Chases' seemingly willing promise to pay may have influenced the sentencing in a criminal proceeding. It is the relationship between the debt and the criminal justice system, more than the nature of the act which resulted in the consent judgment, which is of concern to this Court.

■ Moreover, it would not be illogical to consider that the $25,000 judgment was in the nature of restitution to the Harolds and a part of Chase's rehabilitation. If the $25,000 had been court-ordered rehabilitation, it would not be considered a debt subject to either Chapter 7 or Chapter 13 discharge. *In Re Johnson,* 32 B.R. 614 (D.Colo.1983); *In Re Magnifico,* 21 B.R. 800 (D.Ariz.1982). Whether or not the judgment is considered to be a form of restitution, to allow the Chases to avoid the thrust of the judgment would be to undermine the criminal justice system and to profit by their false promise to pay the victim of a crime.

This Court is concerned not only with the nature of the debt, but also with the link between the events surrounding the incurring of the debt and the subsequent petition for Chapter 13 reorganization. The debtor agreed to the judgment with little or no intention of complying with it. He then made no attempt to pay it. When it became apparent to him via garnishment action that this judgment was real and he would have to pay the Harolds, he immediately filed for bankruptcy reorganization. He thus invoked the authority of the bankruptcy system to discharge an obligation entered into pursuant to other court action, an obligation which he did not ever intend to honor. If ever there was a case of allowing a debtor to profit from his own wrong through the Chapter 13 process, this is it. *Memphis Bank and Trust* at 432.

■ A plan predicated on prior fraudulent transfers constitutes an abuse of the provisions and perverts the spirit of Chapter 13. *In Re Weyand,* 33 B.R. 553 (D.Colo.1983). This Court will not tolerate the discharge of a debt tactically incurred shortly before the invocation of the Chapter 13 process, particularly when the debt would be non-dischargeable under a Chapter 7 because of willful or malicious conduct. *First National Bank of Dayton* at 379.

■ As this Court has noted before, the "good faith" requirement has long been the policing mechanism of bankruptcy courts to assure that those who invoke the reorganization provisions of the bankruptcy law do so only to accomplish the aims and objectives of bankruptcy philosophy and policy and for no other purpose. *Furness v. Lilienfield,* 35 B.R. 1006 (D.Md. 1983), citing *In Re Mogul,* 17 B.R. 680 (M.D.Ala.1980). The reorganization plan of the appellees does not accomplish the objectives of the bankruptcy laws in their broadest sense and was not filed in good faith. Accordingly, the order of the Bankruptcy Court confirming their plan is overturned, and the case is remanded to the Bankruptcy Court for appropriate action.