**In re Robbin C. BROWN, Debtor.**

**Bankruptcy No. 85 B 2541.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 2, 1985.

Asher Feren, Chicago, Ill., for debtor.

Neil F. Hartigan, Chicago, Ill., for Illinois Dept. of Labor.

*Memorandum Opinion*

JOHN D. SCHWARTZ, Bankruptcy Judge.

This cause comes before the Court on the objection of the creditor, the Illinois Department of Labor ("State") to the confirmation of the proposed Chapter 13 plan of the debtor. The State objects to the debtor's plan which proposes to pay 20% payment on a judgment debt for $3,218.00 arising out of the fraudulent receipt of unemployment insurance benefits. The State asserts that the debtor has not proposed the plan in good faith and that the classification of this judgment debt with other unsecured consumer debts constitutes unfair discrimination. The State's objection will be sustained.

The debtor applied to the State for unemployment benefits on September 27, 1979, reporting that her last day of work was September 25, 1979. The State determined that she was eligible and she began to receive benefits. On November 10, 1979, the debtor found new employment yet she continued to make weekly representations to the State that she remained unemployed and thus continued to collect unemployment insurance through May 3, 1980, a period of 26 weeks. (Notice of Fraud Decision, State's Exhibit A).

After an administrative hearing on September 29, 1981 which the debtor attended, the State determined that she knowingly made false statements regarding her employment status for the purpose of collecting unemployment benefits to which she was not entitled. (Notice of Fraud Decision, State's Exhibit A). The debtor was fined $3,094.00, the approximate amount received. On April 14, 1983, a state court judgment was entered against her for that

amount (State's Exhibit B) and she did not appeal.

On February 11, 1985, the State commenced wage deduction proceedings against the debtor for the unpaid portion of the judgment or $2,769.00 plus $449.00 interest, totalling $3,218.00. Fifteen days later, on February 26, 1985, the debtor filed for relief under Chapter 13 of the Bankruptcy Code.

Between November 19, 1981, the date of the State's Fraud Decision, and February 11, 1985, when the State commenced garnishment proceedings, the debtor repaid the State only $325. In 1984 she purchased a new car with a loan from Citicorp Acceptance Co. The sum of $7,000 remains due to Citicorp as of the date of the petition.

Under the proposed Chapter 13 plan, Citicorp Acceptance Co., the only secured creditor, will receive 100% payment of $5,192.00, the market value of the car. The plan proposes 20% payment of unsecured debts, which includes $3,114.14 in consumer debts and the $3,128.00 judgment debt owed to the State. The debtor's present net salary is $1,036.00 per month. The plan provides for 44 monthly payments of $190.00, $130.00 of which is for the car loan.

The Court must determine whether the debtor has met the "good faith" requirement of 11 U.S.C. § 1325(a)(3) in attempting to discharge 80% of the judgment debt owed to the State, and if so, whether her classification of the State's claim as one and the same with all other unsecured claims constitutes unfair discrimination under 11 U.S.C. § 1322(b)(1) and § 1122(a).

■■■■ Chapter 13 of the Bankruptcy Code offers the debtor more liberal treatment than Chapter 7 which limits the dischargeability of certain debts incurred by fraud or misdealing. 11 U.S.C. § 523. Section 1328(a) 11 U.S.C. specifically prohibits the discharge of child support, alimony, and payments to cure defaults where such payments are due subsequent to the final payment completing the Chapter 13 plan. By implication, all other debts are dischargeable. *In re Jones*, 31 B.R. 485, 488 (Bankr.N.D.Ill.1983).

■■■■ The broad scope of the Chapter 13 discharge reflects Congressional intent to encourage wage-earning debtors to make the best effort to pay their debts instead of resorting to Chapter 7 liquidation. *In re Rimgale*, 669 F.2d 426, 428 (7th Cir.1982); *In re Jones*, 31 B.R. at 488; *In re Seely*, 6 B.R. 309, 311 (Bankr.E.D.Va. 1980). To benefit from the liberal discharge provisions, the debtor must comply with 11 U.S.C. § 1325(a)(3) which requires that "the plan has been proposed in good faith and not by any means forbidden by law". The good faith requirement should limit misuse and manipulation of bankruptcy remedies for purposes other than the Bankruptcy Code's principal objective of financial rehabilitation. *In re Chase*, 43 B.R. 739, 745 (D.Md.1984). The Bankruptcy Court has a duty to examine on a case by case basis whether the debtor has acted in good faith, *In re Rimgale*, 669 F.2d at 428, and has broad discretion to prevent abuses of the liberal Chapter 13 discharge provisions. *In re Oliver*, 28 B.R. 420, 425 (Bankr.S.D.Ohio 1983).

Because the Bankruptcy Code fails to define "good faith", courts have made varying and sometimes contradictory interpretations of the term's meaning. Some courts have limited the scope of their good faith inquiry to the debtor's actions in preparing the plan by considering whether debts and expenses are correctly listed, whether any inaccuracies are intended to mislead the court, and whether the debtor proposes a substantial and meaningful payment to unsecured creditors. *In re Jones*, 31 B.R. at 490; *In re Seely*, 6 B.R. at 313. So long as the debtor acts in good faith in proposing a plan, a liberal interpretation of § 1325(a) language that "a plan has been proposed in good faith" allows for the discharge of debts regardless of whether they are fraudulently or maliciously incurred.

Other courts have considered the totality of circumstances to determine whether the debtor has acted with fundamental fairness in dealing with creditors. These courts

have viewed the circumstances in which the debt is incurred as one of the several factors indicating a presence or absence of good faith. *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427, 432 (6th Cir. 1982); *In re Chase,* 43 B.R. at 742; *Furness v. Lilienfield,* 35 B.R. 1106, 1012 (D.Md.1983); *In re Oliver,* 28 B.R. at 426; *In re Robinson,* 26 B.R. 377, 378 (Bankr.S.D.Ohio 1982).

Noting that the liberal discharge provisions of Chapter 13 are subject to abuse, the Sixth Circuit Court of Appeals stated:

> We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong.... The view that the Bankruptcy Court should not consider the debtor's preplan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g. Matter of Kull,* 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are 'the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors').... When the debtor's conduct is dishonest, the plan simply should not be confirmed.

*Memphis Bank and Trust Co. v. Whitman,* 692 F.2d at 431–32.

▮ Although the debtor's debt to the State is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) because it was incurred through fraudulent misrepresentations, it is not automatically barred from discharge in a Chapter 13 proceeding, nor does this by itself indicate a lack of good faith on the part of the debtor. *In re Rimgale,* 669 F.2d at 431; *In re Eppers,* 35 B.R. 755, 756 (D.N.Mex.1984). Rather, a determination that good faith is lacking should be premised on all the facts and circumstances of the particular case. *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir. 1983); *In re Duke,* 29 B.R. 802, 805 (D.Kan.1983). That a proposed plan discharges a debt which is non-dischargeable in Chapter 7 proceedings is one of several factors a court may consider. *In re Linda Boyd,* 57 B.R. 410, 411–12 (Bankr.N.D.Ill. 1983); *In re Sanders,* 13 B.R. 320, 322 (Bankr.D.Kan.1981).

▮ Three and one-half years after the State issued its Fraud Decision, the debtor now claims she acted innocently and truly believed she was entitled to the unemployment benefits she received after she had found new employment. (Debtor's Brief at 9.) However, she never appealed the State's findings of fraudulent conduct. The debtor cannot resort to bankruptcy proceedings to resolve a matter which should have been addressed by appellate review. *In re Chura,* 33 B.R. 558, 561 (Bankr.D.Col.1983). Moreover, the bankruptcy court may look to a prior judgment as *res judicata* of the issue of questionable conduct for the purposes of evaluating a debtor's good faith. *In re Oliver,* 28 B.R. at 425–26. Under the circumstances, the court is compelled to rely on the findings of the administrative hearing of the Illinois Department of Labor. To do otherwise would be to allow the debtor to manipulate bankruptcy remedies.

A finding that the debtor's primary objective in filing for bankruptcy relief is to extinguish a debt incurred through fraud suggests that the debtor lacks the requisite good faith. *In re Chura,* 33 B.R. at 560. "Such a discharge runs contrary to one of the primary purposes of the bankruptcy laws which is to provide a fresh start for the *honest* debtor." *In re Troyer,* 24 B.R. 727, 731 (Bankr.N.D.Ohio 1982) (emphasis added).

▮ The facts of this case strongly suggest that the debtor filed for bankruptcy relief primarily to avoid paying the $3,218.00 judgment debt owed to the State while keeping her new automobile. The debtor filed for bankruptcy relief just 15 days after the State instituted garnishment proceedings against her. Courts have found that the filing for bankruptcy relief soon after the entry of a judgment or the

commencement of wage garnishment proceedings indicates the debtor's desire to use bankruptcy proceedings to avoid paying a debt rather than for financial rehabilitation. *Furness v. Lilienfield,* 35 B.R. at 1012; *In re Chura,* 33 B.R. at 560; *In re Troyer,* 24 B.R. at 731.

Since the Fraud Decision in November, 1981, the debtor has repaid the State $325.00, yet the record fails to show a genuine intent on the debtor's part to pay the judgment debt. To the contrary, in 1984 the debtor purchased a new automobile and procured a $7,000 loan on which she obligated herself to make monthly installments of $205.87. This large financial obligation was incurred 3 years subsequent to the Fraud Decision at a time when 90% of the debt remained outstanding, indicating the debtor had no intention of repaying the monies due the State.

Upon review of all the facts and circumstances of this case the Court finds that the Chapter 13 plan has not been filed in good faith as required by 11 U.S.C. § 1325(a)(3). Having determined that the plan cannot be confirmed because of the absence of good faith, the Court need not address the issue of unfair discrimination on the proposed classification of unsecured debts. *In re Blackwell,* 5 B.R. 748, 751 (Bankr.W.D.Mich.1980).

The Court has heretofore afforded the debtor an opportunity to amend her plan and she has rejected such opportunity. Accordingly, confirmation of the proposed Chapter 13 plan is denied and the case is dismissed. The standing trustee is directed to serve the appropriate notice.