**In re William Arnold BABER, Cindy Dockery Baber, Debtors.**

**Bankruptcy No. 5–85–00328.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 31, 1986.

Philip L. Southers, Waynesboro, Va., for debtors.

Sidney H. Kirstein, McRorie, Kirstein, McMahan & Gay, Lynchburg, Va., for creditor.

## MEMORANDUM OPINION

THOMAS J. WILSON, Bankruptcy Judge.

Upon the Motion for Re-conversion of Coleman-Adams Construction, Inc. ("Coleman-Adams"), an unsecured creditor of William A. Baber, a Debtor herein (the "Debtor"), the Court is called upon to determine whether cause exists, pursuant to 11 U.S.C. § 1307(c), to re-convert this case to a case under Chapter 7.

On or about June 8, 1983, the Debtor sold to Coleman-Adams a diesel forklift truck and collected the agreed sale price of $18,000.00. Unbeknownst to Coleman-Adams, said forklift had been stolen by the

Debtor some time earlier with the purpose of selling it under the guise of ownership. Coleman-Adams first learned of the theft and their consequent bad title to the forklift after a second item of machinery which they were considering purchasing from the Debtor was discovered to have been stolen as well.

The Debtor has subsequently plead guilty to two separate counts of grand larceny in criminal cases in Albemarle and Rockingham Counties arising out of the aforementioned incidents. The larceny conviction from the Circuit Court of Rockingham County involved the theft of the forklift for which Coleman-Adams had paid the Debtor and ended in the Debtor's receiving a suspended twelve-month jail sentence. The Albemarle County conviction involved the machinery which the Debtor had tried to sell to Coleman-Adams but for which payment had not been made. The Albemarle Court directed the Debtor to participate in a community diversion program which in turn ordered him to make weekly payments of $22.00 to be applied to court costs and to ultimately make restitution to Coleman-Adams.

The Debtor originally proceeded in bankruptcy by filing, with his wife, a Joint Voluntary Chapter 7 petition on August 27, 1985. The Chapter 7 filing effectively stayed the already-pending civil suit brought by Coleman-Adams against the Debtor in the Lynchburg Circuit Court. That suit sought, by Motion for Judgment, to recover the $18,000.00 purchase price of the stolen forklift, which had been surrendered to the appropriate parties, plus other compensatory and punitive damages, and the Chapter 7 filing preceded that suit's scheduled trial date by just two days.

On October 10, 1985, Coleman-Adams instituted an adversary proceeding in the Chapter 7 case seeking to except from discharge its claims against the Debtor pursuant to Bankruptcy Code § 523(a). Section 523(a) provides that debts arising out of fraud or larceny are nondischargeable in a Chapter 7 case. The exceptions from discharge provided by § 523(a) do not apply,

however, in a successfully completed Chapter 13 case, the Chapter 13 discharge being more extensive in scope, as provided in § 1328(a). Counsel for the Debtor concedes that a substantial motivating factor behind the conversion of the Debtor's Chapter 7 to a Chapter 13 on November 7, 1985, was the existence of the aforementioned adversary proceeding and the Debtor's seeming ability to avoid the consequences of a possible resolution of that proceeding in favor of Coleman-Adams by invoking the more generous discharge provisions of § 1328.

A hearing was held in this matter on December 11, 1985, at which time the Court heard the arguments of counsel. Coleman-Adams' position is that the Debtors converted the case to a Chapter 13 proceeding solely to avoid the potential Chapter 7 nondischargeability of the substantial debt to Coleman-Adams, that the plan as proposed provides for at best a *de minimis* payout to unsecured creditors, that the proposed plan, let alone any meaningful modified plan, is unfeasible in light of the Debtors' financial outlook, and that the totality of these factors indicates that the Chapter 13 was not instituted in good faith.

In support of the Debtors' good faith in converting to a Chapter 13, counsel for the Debtors maintains that, although the potential Chapter 7 nondischargeability was a factor underlying the conversion, it was not the sole reason for the conversion but that, rather, the Debtors had contemplated filing a Chapter 13 from the outset of their decision to seek bankruptcy protection. Counsel emphasizes that, while the proposed payments under the plan are low in dollar amount, they nevertheless represent a substantial percentage of the Debtors' income. Counsel announces that the Debtors are prepared to modify their plan by extending it from eighteen months to thirty-six months and that, in the event the criminal restitution payments be deemed to fall outside the scope of the Chapter 13, the Debtors can arrange to reduce their child care expenses to permit them to continue mak-

ing payments to the community diversion program.

◼ The mere fact that a Debtor, having a debt which would be nondischargeable in a Chapter 7, chooses to proceed under Chapter 13, where such debt *is* dischargeable, does not in and of itself constitute bad faith. Were such the case, debtors with debts which would be excepted from discharge in a Chapter 7 would be precluded from the option of a Chapter 13, rendering meaningless the broader scope of the Chapter 13 discharge. At the same time, however, debtors are not free to intentionally circumvent the specific exceptions to the Chapter 7 discharge merely by clothing themselves with the garb of a Chapter 13. A Chapter 13 proceeding must be instituted in good faith and cannot be pursued solely as a means of abusing the bankruptcy laws. *See, e.g., In re Beauty*, 42 B.R. 655, (D.C.D.La.), *app. dismissed*, 745 F.2d 53 (5th Cir.1984). *Cf.* 11 U.S.C. § 1325(a)(3) (Chapter 13 plan must be proposed by means permitted by law *and* in good faith).

This matter raises the issue of the good faith of the Debtors in converting to a Chapter 13, as well as their good faith in proposing their plan, and the two issues are necessarily interrelated. The Fourth Circuit has addressed the issue of good faith as a requirement of confirmation of a proposed plan, good faith being made a precondition to confirmation by 11 U.S.C. § 1325(a)(3). In *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982), the Fourth Circuit adopted a case by case approach to the determination of good faith, declaring that such a determination could only be reached fairly after an examination of the "totality of circumstance." *Id.* at 972. The Fourth Circuit described what it found to be the general parameters of good faith in Chapter 13 cases: There must not have been "an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan ..." *Ibid., quoting* 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978) (citations omitted).

◼ In light of the totality of the circumstances of the instant case, the Court finds that the Debtors converted to Chapter 13 solely to avoid the liability to Coleman-Adams and without the serious intention or prospect of putting forth a meaningful Chapter 13 plan. The debt to Coleman-Adams, excluding any potential liability for punitive damages, represents over eighty percent of the Debtors' total outstanding debt. The timing of their conversion persuasively demonstrates the actual goal of the conversion—the evasion of their most substantial liability, itself having been brought on by the Debtor's own larcenous acts. The proposed plan, as well as the Chapter 13 schedules, demonstrate an attempt to play fast and loose with the bankruptcy laws. The Debtors' Chapter 7 schedules show an excess of monthly income over expenses of only $7.00, and yet only upon their conversion to a Chapter 13 are the Debtors suddenly declaring a surplus of over $33.00. The Debtors' plan provides for eighteen monthly payments of $30.00 each which, if made, would pay their creditors, after priority tax claims and trustee's fees, a negligible payout of less than .7% of their total claims. Only upon the objection of Coleman-Adams have the Debtors proposed to extend their plan to thirty-six months, and only in the event that the ordered criminal restitution payments are determined not to fall within the domain of the Chapter 13 will the Debtors see fit to reduce their monthly child care expenses by $92.00 per month to accomodate them. It seems clear to this Court that the Debtors are attempting to manipulate the bankruptcy laws, to pay as little as they possibly can, solely to avoid the civil consequences of William Baber's larceny. As such, their efforts may fall within the letter of the Bankruptcy Code, but they in no way comport with the spirit or purpose of Chapter 13. Accordingly, their conversion to Chapter 13 cannot be found to have been made in good faith and an appropriate order will enter re-converting this case to a Chapter 7 proceeding.