**In re Amal KAZZAZ and Nassib Kazzaz, Debtors.**

**Bankruptcy No. 85–01477–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 4, 1986.

Nathan A. Nelson, Jr., Richmond, Va., for debtors.

Robert B. Delano, Jr.; Richmond, Va., for Merchants Mut. Ins. Co.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the objection of Merchants Mutual Insurance Company ("Merchants Mutual") to confirmation of the Chapter 13 plan of the debtors in the above-styled case, Nassib and Amal Kazzaz (the "debtors"). A hearing was convened on the confirmation of the debtors' plan and on Merchants Mutual's objection thereto on April 3, 1986, at the conclusion of which the Court made certain findings of fact and conclusions of law. However, the parties requested the opportunity to brief the issue of whether the Chapter 13 plan was submitted in good faith as required by 11 U.S.C. § 1325(a)(3), and that issue was subsequently taken under advisement. Accordingly, based upon the briefs filed by the parties, the evidence adduced at the hearing, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Nassib and Amal Kazzaz, husband and wife, filed a petition for relief under Chapter 13 of Title 11 of the United States Code on September 19, 1985. An initial Chapter 13 plan was filed on October 4, 1985, and a hearing was convened on confirmation of the plan on November 13, 1985. Due to the illness of the debtors' counsel and the presence of an objection to confirmation by a secured creditor, Bank of Virginia Mortgage Corporation, the hearing on confirmation was continued until December 18, 1985. At the continued hearing, the debtors asked for an additional period of time for confirmation so that an amended plan could be filed with appropriate notice to all creditors as required by the Bankruptcy Rules. The confirmation hearing was then continued to January 22, 1986.

On January 15, 1986, Merchants Mutual filed an objection to confirmation to the debtors' amended plan. The basis underlying Merchants Mutual's objection stems from an insurance policy maintained by it on the Cedars Restaurant, a business formerly owned and operated by the debtors. The policy covered the period from January 19, 1982 to January 19, 1983 and on July 25, 1982, the restaurant was apparently destroyed by fire, causing Merchants Mutual to pay to the debtors the sum of $28,860.76 to settle the claim arising under its policy.

Merchants Mutual asserts in its objection that pursuant to the terms of the insurance contract, should either of the debtors ever be convicted of a crime in regard to causing the aforesaid loss or in regard to recovery of the insurance monies, Merchants

Mutual would become entitled to immediate repayment of the entire amount disbursed under the insurance contract. On or about October 27, 1983, Nassib Kazzaz was convicted of the crime of attempted grand larceny of insurance monies from Merchants Mutual, and Merchants Mutual sought reimbursement under the terms of the contract. The objection also asserts that Merchants Mutual was unsuccessful in its attempts to collect the funds paid to the debtors, and after commencing a civil suit on the contract in the Circuit Court of Henrico County, Virginia, Merchants Mutual was awarded judgment against both Nassib and Amal Kazzaz on April 3, 1985 for $28,860.70, plus costs and interest. A copy of said judgment was submitted into evidence at the hearing convened on confirmation and on the objection to confirmation on April 3, 1986.

Merchants Mutual sought to enforce its judgment by garnishing the wages of Amal Kazzaz, and debtors' interrogatories were scheduled for September 19, 1985; however, the interrogatories were stayed by the filing of the instant petition under Chapter 13. Merchants Mutual's objection to confirmation of the debtors' amended Chapter 13 plan is threefold. First, due to the fact the debt owed to Merchants Mutual would allegedly be nondischargeable in Chapter 7 under 11 U.S.C. § 523(a)(2)(A) as incurred by false pretenses, false representations or actual fraud, Merchants Mutual argues that a 16 percent payment as proposed under the plan would not entitle it to as much as it would receive in liquidation, *i.e.* the entire debt would be recoverable if it were nondischargeable, thereby violating the confirmation requirement of 11 U.S.C. § 1325(a)(4).

Secondly, Merchants Mutual objects to confirmation on the basis that the debtors have not committed their entire disposable income to the plan as required by 11 U.S.C. § 1325(b), and that the debtors have overstated their monthly expenses. Lastly, the insurance company submits that the debtors' plan should not be confirmed because attempting to discharge the debt to it in light of the criminal conviction violates the good faith standard required for confirmation under 11 U.S.C. § 1325(a)(3).

At the evidentiary hearing convened on the confirmation of the debtors' plan and on Merchants Mutual's objection on April 3, 1986, the Court made a finding that a debt nondischargeable under § 523(a)(2) in a Chapter 7 liquidation is dischargeable under the broad discharge provision of 11 U.S.C. § 1328(a), provided that the confirmation requirements under § 1325(a) are complied with and the plan is successfully completed. The Court also concluded that Merchants Mutual's objection that it would receive more in liquidation than under Chapter 13 should not be sustained. The Court stated that § 1325(a)(4) is merely intended to insure that a Chapter 13 creditor will receive as much under the plan as it would receive from the liquidated assets of the estate in a Chapter 7 proceeding. As it was debtors' counsel's representation that this case would have been a "no-asset" case were it filed as a Chapter 7, Merchants Mutual would have received nothing from liquidated assets, even though, had it proved nondischargeability, the debt would have been recoverable independent of the Chapter 7 bankruptcy case.

The Court also addressed the second prong of Merchants Mutual's objection, as evidence was presented as to the average monthly income and expenses of the debtors' household. Amal Kazzaz testified that she provides the majority of support for the family, although her husband recently secured employment with a local fast food restaurant. At the conclusion of the evidence taken on the nature of the debtors' monthly income and expenses, the Court made a finding that a payment to the trustee of more than $110 per month, the proposed monthly payment under the plan, would leave the debtors with a negative disposable income, and that the debtors could not be expected to pay a greater amount per month. The Court expressed some concern over the necessity of the debtors having to support three grown children living at home, only one of which even has sporadic employment, given the debt-

ors' current financial predicament. However, based upon the family's needs, the monthly expenses did not appear to be excessive or overstated. Merchants Mutual's third objection, *i.e.* that the petition was not filed in good faith, was taken under advisement after the parties were given the opportunity to brief the matter.

## CONCLUSIONS OF LAW

Under 11 U.S.C. § 1325(a), a bankruptcy court must confirm a debtor's proposed Chapter 13 plan if the criteria set forth under that subsection by Congress have been complied with.[1] *In re Chase,* 43 B.R. 739, 741 (D.C.Md.1984). Merchants Mutual's remaining objection is that the debtors' plan in this case has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3) due to the presence of an alleged substantial nondischargeable unsecured debt, and therefore confirmation should be denied.[2] The issue of good faith in a Chapter 13 plan has been viewed as a rather elastic concept, yet there is a substantial body of case law that gives this Court valuable precedential guidance.

1. 11 U.S.C. § 1325(a). Confirmation of plan.
 (a) Except as provided in subsection (b), the court shall confirm a plan if—
 (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 (5) with respect to each allowed secured claim provided for by the plan—
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

In *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982), the Fourth Circuit, without attempting to be exhaustive, set forth several factors which a court might consider in determining whether a debtor's Chapter 13 plan has been filed in good faith. Those factors include: (1) the percentage of proposed repayment, (2) the debtor's financial situation, (3) the period of time over which payments will be made, (4) the debtors employment history and prospects, (5) the nature and amount of unsecured claims, (6) the debtor's past bankruptcy filings, (7) the debtor's honesty in representing facts, and (8) any unusual or exceptional circumstances facing the particular debtor. *Id.* at 972. The court stated "[a]lthough the court's discretion in making the good faith determination is necessarily a broad one, the *totality of the circumstances* must be examined on a case by case basis in order fairly to apply the statute as now written." *Id.* (Emphasis added).

Since the *Deans* decision rendered several years ago, other courts have considered the issue of good faith in light of its ruling, including this Court in *In re McAloon,* 44 B.R. 831 (Bankr.E.D.Va.1984).[3] In a deci-

 (C) the debtor surrenders the property securing such claim to such holder; and
 (6) the debtor will be able to make all payments under the plan and to comply with the plan.

2. Under Chapter 13 of the Bankruptcy Code, certain debts that would be nondischargeable under Chapter 7 are discharged by the more liberal discharge provision of 11 U.S.C. § 1328(a). Section 1328(a) provides as follows:
 (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
 (1) provided for under section 1322(b)(5) of this title; or
 (2) of the kind specified in section 523(a)(5) of this title.

3. In *McAloon,* this Court held that a Chapter 13 plan, with 77 percent of the total unsecured debt represented by otherwise nondischargeable student loan obligations, could be confirmed with a 25 percent payout to unsecured creditors giv-

sion handed down approximately the same time as *Deans*, the Sixth Circuit found two additional aspects of the debtor's behavior to be relevant to the good faith determination: the circumstances under which the debtor contracted his debts and the demonstrated *bona fides* or lack of same in dealing with creditors. *Memphis Bank and Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982) *see In re Chase*, 43 B.R. at 742. The *Memphis* court noted that "we should not allow a debtor to obtain money, services or products from a seller by larceny, fraud, or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong." *Memphis*, 692 F.2d at 432; *Chase*, 43 B.R. at 742.

In later Circuit Court cases, the Eighth and Eleventh Circuits expanded upon the *Memphis* and *Deans* factors and determined that the scope of inquiry into good faith might include an examination of possible preferential treatment between classes of creditors, the extent to which secured claims are modified, the motivation and sincerity of the debtor seeking Chapter 13 relief, and whether the type of debts sought to be discharged are of the type nondischargeable under Chapter 7. *See In re Kitchens*, 702 F.2d 885, 889 (8th Cir. 1983); *In re Estus*, 695 F.2d 311, 317 (11th Cir.1982); *Chase*, 43 B.R. at 743. Moreover, the Tenth Circuit has adopted the *Estus* and *Kitchens* factors in *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir. 1983).

 The purpose of the above review of the relevant case law is to demonstrate that, consistent with the Fourth Circuit's decision in *Deans*, no one factor is determi-

native of whether a Chapter 13 petition has been filed in good faith. Although Merchants Mutual argued at the hearing on confirmation that the mere presence of a debt nondischargeable under Chapter 7 in a Chapter 13 plan would be in violation of the good faith standard of 11 U.S.C. § 1325(a)(3), a position from which it has substantially backed down, such is clearly not the intent of Congress in enacting the liberal discharge provision in 11 U.S.C. § 1328(a). As the court in *In re Chase*, 43 B.R. 739, 743 (D.C.Md.1984) stated, "it would seem contradictory to accept on the one hand a theory that debts incurred through fraud or willful bad conduct can be discharged under Chapter 13 and on the other hand, to assert that a plan which attempts to obtain such a discharge is one proposed in bad faith." The alleged nondischargeability of a debt under Chapter 7 is but one factor to be considered in the overall determination of good faith in Chapter 13, and given that *Deans* left the list of factors relevant to that decision open for the bankruptcy court's consideration, weighing that particular factor with the other factors previously outlined would neither be contradictory nor impermissible under the law in this Circuit.

Looking at the relevant factors as set forth, the percentage of the proposed repayment to unsecured creditors and the nature and amount of unsecured claims should be looked at together. Assuming *arguendo* that the debt owing to Merchant's Mutual would be nondischargeable in a Chapter 7 liquidation under § 523(a)(2) of the Bankruptcy Code, Merchants Mutual asserts that of the $37,092.39 in unsecured debts listed in the proofs of claim filed thus far, the $28,860 obligation to it represents 77 percent of the total unsecured debt.

en that the *Deans* test did not preclude a finding of good faith. The *McAloon* decision, cited by both the debtors and Merchants Mutual in their briefs, was appealed to the United States District Court for the Eastern District of Virginia after an order of confirmation was entered by this Court. The District Court subsequently remanded the case back to this Court in an unreported

opinion for further consideration in light of additional facts in evidence not considered by this Court in its initial ruling. Upon reconsideration, this Court reaffirmed its earlier decision and concluded that the plan was filed in good faith. At this time, the matter is again on appeal to the District Court.

Merchants Mutual implies that given the disproportionate relationship of dischargeable and nondischargeable debts in the plan, the debtors' intention in filing under Chapter 13 was to discharge its debt in order to further benefit from the fruits of Nassib Kazzaz' wrongful conduct.

■ Merchants Mutual, however, has misread 11 U.S.C. § 1325(a)(3). Section 1325(a)(3) states that a Chapter 13 plan must be *"proposed* in good faith," and the relationship of nondischargeable debts to dischargeable debts should be viewed as of the date of the filing of the plan, not the date of the expiration of the time for filing proofs of claim. At the time the debtors in this case proposed their Chapter 13 plan, their unsecured debt totalled approximately $53,000. The $28,860.76 judgment in favor of Merchants Mutual represents approximately 54 percent of the unsecured debt, evidencing a considerably different composition of dischargeable and nondischargeable debts than that proposed by Merchants Mutual. Not only must the debtors in this case contend with over $24,000 in unsecured debt above and beyond the allegedly nondischargeable obligation to Merchants Mutual, they must also contend with over $62,000 in secured debt. The discharge of the debt to Merchants Mutual is surely a reason for the filing of the Chapter 13 petition, but the Court cannot say that it was the overriding purpose of the filing given the other obligations that the debtors need to satisfy.

In further examining the *Deans* factors, it appears that the debtors' financial situation and employment history and prospects are not favorable. Mrs. Kazzaz testified that she is essentially the sole supporter of the family, even though her husband has recently obtained employment at a Taco Bell Restaurant in Richmond. In order to meet the proposed $110 per month payment to the Chapter 13 trustee under the plan, Mrs. Kazzaz must work a given amount of overtime every month, and the prospects of obtaining her superior's approval to work additional overtime is not likely. Mr. Kazzaz, who cannot read or write English, and who speaks it haltingly, is essentially a minimum wage employee with no apparent specialized training, and the prospect of Mr. Kazzaz obtaining regular employment with a substantially increased income would appear to be marginal at best. Mrs. Kazzaz further testified that although she on occasion receives $40 or $50 per month from one of her children, the income from that child is both too sporatic and too inconsistent to be considered a regular source of income. Thus, it cannot be said that the debtors would be able to work their way out of their financial situation absent the filing under Chapter 13.

The Court also has no evidence before it that the debtors have ever previously filed a petition for relief under the Bankruptcy Code, and the Court finds, absent evidence to the contrary, that the debtors were forthright in representing facts both in their petition and at the hearing on confirmation. There is no evidence that assets have been hidden or that debts have been omitted from the debtors' schedules, nor has there been evidence submitted which might lead the Court to believe that the debtors are holding back relevant information necessary to the Court's determination. With regard to whether there are any unusual or exceptional problems facing the debtors, the Court certainly must take into consideration Mr. Kazzaz' illiteracy and his difficulty with the spoken English language.

Notwithstanding the fact that a number of factors may weigh in favor of good faith, as is present in this case, some courts have refused to confirm a plan as proposed in good faith where the debtor has sought to discharge an acknowledged nondischargeable debt that was not intended to be repaid by the debtor, and where the court doubted the debtor's motivation and sincerity in filing Chapter 13. For instance, in *In re Chase*, 43 B.R. 739 (D.C.

Md.1984), the debtor entered into a consent judgment for a fixed sum to avoid serious criminal proceedings against him in a child molestation suit. Immediately after the debtor's wages were garnished to enforce the consent judgment, the debtor filed for Chapter 13. *Id.* The Court in *Chase* found that the debtor had no intention of paying the obligation arising from the consent judgment, and that allowing the Chapter 13 plan to be confirmed allowed the debtor to escape the sanctions of a criminal proceeding by making a false promise to pay the victim of a crime. *Id.* at 745. Given that the debtor obviously had no intention to pay the debt, the court declined confirmation stating that such a plan "constitutes an abuse of the provisions and perverts the spirit of Chapter 13." *Id.*

In *In re Baber*, 57 B.R. 597 (Bankr.W.D. Va.1986) the debtor was convicted of larceny and sentenced to a 12 month suspended sentence for stealing a fork lift and other equipment, and then selling it to a creditor that had no knowledge of the debtor's wrongful conduct. The debtor was placed under an obligation to make restitution to the creditor, and shortly thereafter the debtor filed a petition for relief under Chapter 7. When the creditor that had been defrauded filed an adversary proceeding to have the debt declared nondischargeable under § 523(a), the debtor immediately filed a motion to convert his case to one under Chapter 13. The unsecured creditor moved to re-convert the case to Chapter 7 given the bad faith of the debtor in filing the conversion. Although not technically deciding the issue of good faith on confirmation, the *Baber* court held that the debtor did in fact lack good faith by playing "fast and loose with the bankruptcy laws," and that the timing of the conversion, and the fact that the alleged nondischargeable debt represented over 80 percent of the debtor's unsecured debt, evidenced sufficient lack of compliance with the spirit and intent of Chapter 13 to enter an order of reconversion to Chapter 7. *Id.* at 599.

Likewise, in *In re Boyd*, 57 B.R. 410 (Bankr.N.D.Ill.1983), the debtor pleaded guilty to several counts of theft of public assistance funds from the Department of Public Aid, and judgment was later entered against her for the amount fraudulently misappropriated. The debtor subsequently filed a Chapter 13 plan, proposing to pay 10 percent to her creditors, and the debt owing to the Department of Public Aid represented 97 percent of her total unsecured indebtedness. The court held that a 10% payment to unsecured creditors where essentially all the unsecured debt was nondischargeable was an abuse of "the provisions, purpose and spirit of Chapter 13." *Id.* at 411.

This case, however, is somewhat different than those proposed in *Chase, Baber* and *Boyd*. In *Chase* and *Boyd*, the overwhelming majority of the debtor's unsecured obligations consisted of debts that would otherwise have been nondischargeable in a Chapter 7 liquidation. The debtors here have an alleged nondischargeable debt representing roughly 54 percent of the total unsecured indebtedness, yet there is a considerable portion of other unsecured debt that is, to the best of the Court's knowledge, not tied to conduct which would lead to a nondischargeablility claim. Moreover, the debtors are also faced with over $62,000 in secured debt.

In *Baber*, immediately upon the creditor filing a nondischargeability action, the debtor in that case moved for a conversion to Chapter 13. It was obvious that the sole reason the debtor in that case sought relief under Chapter 13 of the Bankruptcy Code was to attempt to further benefit from his wrongful conduct and avoid having to make a meaningful payment to a creditor with a nondischargeable debt. In the instant situation, the Court cannot say that the debtors are not making their best efforts to pay their creditors, given that their entire disposable income is committed to a five year plan, the maximum the Bankrupt-

cy Code allows, and Mrs. Kazzaz must work overtime to make the minimum payments needed to fund the plan for a 16 percent payout to unsecured creditors. Having taken a considerable amount of evidence regarding the debtors' income and expenses, the Court cannot say that a 16 percent payment to unsecured creditors under the plan is so minimal as to be *de minimus*.

■ Given the other factors discussed, *supra*, in light of the *Deans* decision, and that this Court is not aware that any other debts listed by the petitioners are grounded in nondischargeable conduct, the Court, examining the totality of the circumstances, cannot say that the debtors' plan was not proposed in good faith. It appears from the testimony that it will likely take an extraordinary effort on the part of the debtors to commit enough funds to the plan to meet its requirements as now proposed, and although this Court may have some slight reservation as to the debtors' ability to live up to the terms of the plan in the long run, the Court has no doubts as to their willingness to meet its obligations.

An appropriate Order will issue.