In re James Alvin DIXON, Jr. and
Arlene Yvonne Dixon,
Debtors.

Bankruptcy No. 98–6093–3P3.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 9, 1999.

Alexander G. Smith, Jacksonville, FL, Chapter 7 Trustee.

David J. Pinkston, Jacksonville, FL, for debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This case came before the Court upon Objection to Amended Chapter 13 Plan filed by Alexander G. Smith, Chapter 7 Trustee. After a hearing on September 21, 1999, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On July 29, 1998, James Alvin Dixon, Jr. and Arlene Yvonne Dixon ("Debtors") filed a pro se petition with this Court pursuant to Chapter 7 of the Bankruptcy Code. (Doc. 1.)

2. Debtors failed to list a personal injury claim resulting from an automobile accident in their bankruptcy schedules.

3. Debtors' secured claims total approximately $10,000 and include debts for two vehicles, a word processor and a printer. (Doc. 7.)

4. The market value of Debtors' scheduled personal property totals $2,100, which includes furniture, several televisions, a VCR, stereo computer, appliances, wall décor, personal clothing, and a wedding set. (Doc. 7.)

5. Upon learning of the personal injury claim, Alexander G. Smith, Debtors' Chapter 7 Trustee ("Trustee"), attempted to settle the claim.

6. Trustee filed Application to Employ Charles Farah, Jr. to represent the estate in the settlement of the personal injury claim. (Doc. 10.) Charles Farah, Jr. had originally been retained by Debtors pre-petition to prosecute the claim.

7. Trustee's Application to Employ Charles Farah, Jr. was approved by the Court on September 23, 1998. (Doc. 11.)

8. A settlement in the amount of $15,000 for a liability claim and $25,000 for an uninsured motorist claim was subsequently reached.

9. On October 19, 1998, Trustee filed Notice of Intent to Compromise the personal injury claim for the amounts set forth above. (Doc. 13.)

10. No objections to Trustee's Notice of Intention to Compromise were filed. Subsequently, Trustee settled Debtors' personal injury claim. Trustee received a draft from Geico Insurance Company for $15,000 in settlement of the liability claim. However, Trustee never received possession of the $25,000 for the uninsured motorist claim.

11. On October 21, 1998, Debtors filed Notice of Conversion to Chapter 13. (Doc. 19.)

12. Upon receiving notice of Debtors' conversion, Trustee transferred the $15,000 draft he had received in settlement of Debtors personal injury claim to Mamie Davis, the Chapter 13 Trustee.

13. On November 25, 1998, Debtors filed a Motion for Sanctions against Charles Farah, Jr. and Trustee. (Doc. 27.)

14. In their Motions for Sanctions, Debtors requested, *inter alia,* that Charles Farah, Jr. and Trustee be required to relinquish any interest in Debtors' personal injury claim, and that the case be dismissed.

15. Debtors subsequently received the balance of the settlement proceeds, less attorney's fees paid to Charles Farah, Jr.

16. On January 7, 1999, Trustee filed a Motion to Reconvert Case to Chapter 7. (Doc. 37.) Trustee's Motion was based on the grounds that the plan was not filed in good faith, did not comply with 11 U.S.C. § 1325(a)(4) and was not feasible.

17. Trustee's Motion to Reconvert was denied by the Court on April 21, 1999, on the grounds that an objection to the Chapter 13 would be a more appropriate avenue to obtain the desired relief. (Doc. 51.)

18. On January 12, 1999, an Order Withdrawing Debtors' Motion for Sanctions against Charles Farah, Jr. and Trustee was entered. (Doc. 40.)

19. On August 13, 1999, Trustee filed an objection to Debtors' Amended Chapter 13 Plan.[1] (Doc. 59.)

20. Debtors filed a Second Amended Chapter 13 Plan on August 19, 1999. (Doc. 64.)

21. Pursuant to Debtors' amended plan, plan payments will first be made out of the $15,000 received by the Chapter 13 Trustee for the personal injury claim. Once the $15,000 has been disbursed, Debtors will be required to begin making the plan payments.

---

1. The Court was under the impression that Trustee was proceeding on his objection to Chapter 13 Plan based on the "best interests" test of 11 U.S.C. § 1325(a)(4); however, based on the written submissions by Trustee it is apparent he is proceeding exclusively under 11 U.S.C. § 1325(a)(3) alleging that the plan was not proposed in good faith.

## CONCLUSIONS OF LAW

■ Trustee objects to Debtors' Amended Chapter 13 Plan on the ground that it was not filed in good faith in accordance with 11 U.S.C. § 1325(a)(3). Trustee alleges that Debtors converted their Chapter 7 case to a case under Chapter 13 solely to prevent him from receiving the settlement proceeds from the personal injury claim. Trustee contends that this conduct amounts to a lack of good faith and therefore, the plan should not be confirmed. Debtors argue that they have an absolute right to convert their case from one under Chapter 7 to one under Chapter 13 pursuant to 11 U.S.C. § 706(a).[2] Debtors assert that Trustee's contention that conversion "seems unfair," does not amount to bad faith.

■ Confirmation of a Chapter 13 plan is contingent upon the satisfaction of 11 U.S.C. § 1325(a)(3), which requires that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3) (West 1999). The party who seeks a discharge under Chapter 13 bears the burden of proving good faith, and "to the extent that a creditor preemptively can demonstrate an absence of good faith, or affirmative presence of bad faith, it will enjoy a valid objection to confirmation." *In re Baird,* 234 B.R. 546, 550 (Bankr.M.D.Fla.1999) (citations omitted).

■ The United States Court of Appeals for the Eleventh Circuit has provided this Court with substantial guidance on "good faith" matters. *See Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983). The *Kitchens* Court has provided the following nonexclusive list of factors that

---

2. This section provides: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is void." 11 U.S.C. § 706(a) (West 1999).

courts should consider in determining whether good faith exists:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought bankruptcy protection;

(10) the circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan's administration would place on the trustee;

(12) any exceptional circumstances in the case;

(13) the type of debt and whether it would be nondischargeable in chapter 7; and

(14) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.

*Id.* at 888–89. Because this is not a per se bad faith standard, no one factor is dispositive. *Baird*, 234 B.R. at 551. Rather, the good faith inquiry requires consideration of the totality of the circumstances. *Kitchens*, 702 F.2d at 888. Accordingly, the Court must consider all circumstances surrounding Debtors' pre-petition activity and Chapter 13 filing when making its good faith determination. *Baird*, 234 B.R. at 551 (citing *Matter of Smith*, 848 F.2d 813, 821 (7th Cir.1988)).

Trustee analogizes the instant case to *In re Baird*, a case recently dealt with by this Court involving a "bad faith" scenario. 234 B.R. at 551–54. In *Baird*, the Chapter 13 debtor filed his case because of a pending lawsuit that, in all probability, would have resulted in a judgment that would have been nondischargeable in Chapter 7. *Id.* at 553. Further, the debtor engaged in a series of questionable pre-petition transactions that considerably diminished his estate, thus, he had few assets left to protect via Chapter 13. *Id.* at 551. Moreover, the debtor proposed to pay general unsecured creditors only a miniscule amount on their claims over the statutory three-year minimum. *Id.* at 552. The debtor in *Baird* also had the potential to substantially increase his pay out to creditors over the life of the plan. *Id.* at 553. In *Baird*, the debtor engaged in a pattern of conduct to avoid paying his creditors and, ultimately, filed a Chapter 13 plan to impede a state court lawsuit. Thus, the Court found that the debtor's motivation and intent to escape nearly all his liability hardly comported with the true spirit and purpose of Chapter 13. *Id.* at 554.

However, in the present case, Debtors have not converted their Chapter 7 case to Chapter 13 solely to discharge an otherwise nondischargeable debt. Moreover, Debtors have proposed a five-year plan to ensure that all creditors are treated equitably. Furthermore, based on the evidence presented at the continued confirmation hearing and, in reviewing Debtors' Second Amended Plan, it is clear that Debtors have set forth a meaningful Chapter 13 plan in a serious attempt to repay their creditors. (*See* Docs. 66, 68.) While Debtors did originally omit their personal injury claim from their Chapter 7 bankruptcy schedules, the Court finds that this omission was inadvertent and in no way an attempt to play fast and loose with the bankruptcy laws. The Court notes that Debtors proceeded pro se under Chapter 7 and, while this does not, by itself, excuse the oversight, it does suggest that it was innocent.

**238**

 Trustee cites *In re Baber,* 57 B.R. 597 (Bankr.W.D.Va.1986), and *In re Jeffrey,* 176 B.R. 4 (Bankr.D.Mass.1994), for the proposition that a debtor may only convert a case from Chapter 7 to Chapter 13 in good faith with the sincere intention of putting forth a meaningful plan. However, this Court has previously held that § 706(a) gives a debtor a one-time absolute right to convert a case from Chapter 7 to Chapter 13. *See In re Sobin,* 99 B.R. 483, 484 (Bankr.M.D.Fla.1989); *In re Hanna,* 100 B.R. 591, 593 (Bankr.M.D.Fla.1989). Thus, the mere conversion of a Chapter 7 into a Chapter 13 is not per se bad faith, although it may be a factor to consider when determining "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *In re Sieg,* 120 B.R. 533, 536 (Bankr.D.N.D.1990) (citing *In re Baker,* 736 F.2d 481 (8th Cir.1984)).

Nevertheless, the facts of *Baber* and *Jeffrey* are clearly distinguishable from the case at bar. *See Baber,* 57 B.R. at 598–99; *Jeffrey,* 176 B.R. at 4–5. In *Baber,* after an exception from discharge proceeding was brought, the debtors converted to Chapter 13 solely to avoid the civil consequences of William Baber's criminally larcenous conduct. 57 B.R. at 599. Further, the debtors in *Baber* proposed an unfeasible plan with only a negligible payout of less than .7% to creditors. *Id.* In *Jeffrey,* the debtors sought to convert their Chapter 7 case to Chapter 13 after they had received a discharge. 176 B.R. at 4–5 (noting that because debtor already received discharge, it is clear purpose of converting was not to repay debts, but to evade Chapter 7 obligations). Moreover, the debtors in *Jeffrey* only attempted conversion upon the trustee's discovery of a pending lawsuit that had not been disclosed on their Chapter 7 schedules. *Id.* However, in *Jeffrey,* unlike the present case, the court found that the circumstances suggested that the omission may not have been innocent in light of the fact that debtors' counsel represented them in the tort litigation as well as in the bankruptcy case. 176 B.R. at 5 n. 2. There is simply no evidence of such bad faith present in this case.

### CONCLUSION

Based on the totality of the circumstances, it is clear that Debtors have proposed their plan in good faith with the sincere intention of repaying their debts. Debtors' actions comport with the purpose and spirit of Chapter 13. Accordingly, their plan will be confirmed. Separate orders confirming the plan and overruling Trustee's objection to Debtors' amended plan will be entered in accordance with the foregoing.